FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 12, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARIA M.,[1]<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>　　　　　　Defendant. | No.  1:25-cv-3060-EFS<br><br>**ORDER AFFIRMING THE ALJ DECISION** |

Plaintiff Maria E. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits. Plaintiff claims she is unable to work due primarily to mental impairments, although she has physical impairments as well. The record reflects that Plaintiff's impairments do limit her mentally and physically, however, the ALJ's

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

nondisability finding is adequately explained and supported by substantial evidence. The ALJ's decision is affirmed.

## I.    Background

In March 2021, Plaintiff applied for benefits under Title 16, claiming disability.[2] Plaintiff alleged disability due to breast cancer, fibromyalgia, irritable bowel syndrome, migraines, post-traumatic stress disorder (PTSD), degenerative disc disease, anxiety, and insomnia.[3] After the agency denied benefits, ALJ Brian Battles held a telephone hearing on March 12, 2024, at which Plaintiff and a vocational expert testified.[4] During the hearing, Plaintiff amended her alleged onset date to October 20, 2021.[5]

---

[2] AR 203–12.

[3] AR 258.

[4] AR 38–102, 108–120. The ALJ held a hearing earlier on August 29, 2023, however, neither Plaintiff nor a representative appeared and so the hearing was postponed.

[5] AR 47.

1    The ALJ issued a decision denying benefits.[6] The ALJ found

2    Plaintiff's alleged symptoms were "not entirely consistent with the

3    medical evidence and other evidence. . . ."[7] As to the medical opinions,

4    the ALJ found:

5    - the reviewing opinion of Bruce Eather, PhD, and the

6      examining opinion of Joyce Austin, PMHNP-BC, somewhat

7      persuasive.

8    - the treating opinion of M. Neil Anderson, LCSW, not

9      persuasive.[8]

10

11    _____

12    [6] AR 14–37. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation

13    determines whether a claimant is disabled.

14    [7] AR 23. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*,

15    the ALJ should consider replacing the phrase "not entirely consistent"

16    with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

17    [8] AR 28–29. Plaintiff's medical-opinion arguments focus solely on the

18    mental-health opinions; therefore, the Court focuses on those opinions.

19    *See Nadon v. Bisignano*, 145 F.4th 1133, 1138 (9th Cir. 2025) (deciding

DISPOSITIVE ORDER - 3

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since October 20, 2021, the amended alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: fibromyalgia, a major depressive disorder, an anxiety disorder, and PTSD.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work except as follows:

  [S]he could occasionally climb ladders, ropes or scaffolds. She should never work in hazardous environments such as at unprotected heights or around moving mechanical parts. She should never drive a motor vehicle with respect to performing work related duties. Further, the claimant could understand, remember, and carry out simple instructions in the workplace. She could work in a low stress job, defined as making only occasional

that the claimant forfeited an argument by not challenging the ALJ's findings in that regard).

decisions and tolerating only occasional changes in the work setting. Finally, the claimant could have no more than occasional interaction with supervisors, coworkers and the general public with respect to performing work related duties.

- Step four: Plaintiff had no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as cleaner, packer, and sorter.[9]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[10]

## II.   Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[11] Substantial evidence is

---

[9] AR 17–32.

[10] AR 1–6; ECF No. 1.

[11] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012),

DISPOSITIVE ORDER - 5

1    "more than a mere scintilla but less than a preponderance; it is such

2    relevant evidence as a reasonable mind might accept as adequate to

3    support a conclusion."[12] The court looks to the entire record to

4    determine if substantial evidence supports the ALJ's findings.[13]

### III.   Analysis

Plaintiff argues the ALJ crafted an erroneous RFC based on his

failure to provide clear and convincing reasons for rejecting Plaintiff's

_____

*superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that

the court may not reverse an ALJ decision due to an error that "is

inconsequential to the ultimate nondisability determination").

[12] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978,

980 (9th Cir. 1997)).

[13] *Kaufmann v. Kijakazi*, 32 F4th 843, 851 (9th Cir. 2022). *See also*

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (requiring

the court to consider the entire record, not simply the evidence cited by

the ALJ or the parties) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386

(8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not

indicate that such evidence was not considered[.]").

testimony relating to her mental impairments and by improperly rejecting the mental-health opinion of M. Neil Anderson, LCSW.[14] In response, the Commissioner argues that the ALJ properly evaluated the evidence and the ALJ's findings are supported by substantial evidence. Each contested issue is addressed below.

**A.    Symptom Reports: Plaintiff fails to establish error.**

Plaintiff argues the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony about her mental-health symptoms. The Court disagrees.

1.    <u>Plaintiff's Testimony</u>

Plaintiff testified that she lived with her mom, stepdad, and her two young adult children.[15] She stated that she left the house about once a week to drive herself to therapy, which is about 10–15 minutes

---

[14] Plaintiff's arguments focus solely on her mental-health impairments; therefore, she waived any argument that the RFC was deficient as to her physical impairments and limitations. *See Nadon*, 145 F.4th at 1138.

[15] AR 50.

from her home.[16] She shared that she has a bachelor's degree in business administration and that she most recently worked in 2021 doing part-time accounting and marketing work for a family-owned business.[17] She shared that her cancer treatment made it difficult to sustain the work because she would fall asleep, and then after her cancer treatment, she still had difficulties working because she was too emotional.[18]

In addition, Plaintiff testified that due to past trauma she will forget appointments, will forget to take her medication, has trouble focusing, and will lose track of conversations.[19] Due to trauma and related stress, she gets migraines, which cause blindness in her right eye.[20] She shared that she has difficulty trusting people, she hates going to stores and being around people, she isolates, she has anger

---

[16] AR 51, 76–78.

[17] AR 52–54.

[18] AR 53–58.

[19] AR 61, 63.

[20] AR 61.

outbursts, and she has difficulty sleeping due to nightmares.[21] She stated that when she began therapy she was isolating every day but with therapy she can now go to the store if she is with someone and only stays in her bed about three times a week.[22] She testified that smells and other events will cause her PTSD to trigger.[23] Plaintiff testified that she does not go outside at night due to having been attacked at night.[24]

2.  Standard

After finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work.[25] Factors the ALJ may consider when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) objective medical

---

[21] AR 61–64.

[22] AR 65.

[23] AR 66.

[24] AR 75.

[25] 20 C.F.R. § 416.929(c).

evidence, 2) daily activities; 3) the location, duration, frequency, and intensity of pain or other symptoms; 4) factors that precipitate and aggravate the symptoms; 5) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 6) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; and 7) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms.[26]

If the ALJ finds inconsistency between the claimant's reported symptoms and the evidence, the ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[27] This requires the ALJ to "show his work" and provide a

---

[26] *Id.* § 416.929(c)(2), (3). *See also* 3 Soc. Sec. Law & Prac. § 36:25, Consideration of objective medical evidence (2025).

[27] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022); 20 C.F.R. § 416.929(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7.

"rationale . . . clear enough that it has the power to convince" the reviewing court.[28]

### 3.   The ALJ's Findings

The ALJ found that Plaintiff's mental impairments did limit her, but that Plaintiff's statements about the intensity, persistence, and limiting effect of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.[29] In reaching this finding, the ALJ summarized some of the treatment records, including those authored by counselor Mr. Anderson and Plaintiff's medication-management providers, and the consultative psychological evaluation conducted in March 2022. The ALJ recognized that Plaintiff was often observed with a sad, anxious, or dysthymic mood at her treatment appointments but that there were no "indication of deficits in attention, concentration, or memory" and that she generally had good insight.[30] The ALJ also highlighted that Plaintiff told the psychological

---

[28] *Smartt*, 53 F.4th at 499 (alteration added).

[29] AR 23.

[30] AR 25; AR 26–27.

consultative evaluator that she worked part-time and helped homeschool her child, who was then 17 years old, and that during the consultative evaluation, Plaintiff maintained fair eye contact with no difficulty maintaining attention, concentration, or thought process, although she was labile and tearful at times.[31] The ALJ mentioned that Plaintiff's anxiety generally was more heightened during times of situational stress.[32] The ALJ acknowledged that Plaintiff's treatment included therapy and medication management but that no prescribed medication was recommended to improve concentration.[33]

The ALJ "fully recognize[d] that with medication, the record still reflects some instances of increased symptoms, however, even during brief periods of symptom intensification, the record also shows that the claimant maintained a level of mental function consistent with the finding reached in this decision," which was that Plaintiff could sustain work if she was limited to simple instructions, a low stress job

---

[31] AR 26.

[32] AR 26.

[33] AR 27.

(occasional decisions and occasional work-setting changes), with occasional interaction with supervisors, coworkers, and the general public.[34] As a result, the ALJ found Plaintiff's reports regarding the frequency, severity, and duration of her symptoms were not entirely consistent with the record.[35]

4. Analysis

The ALJ clearly explained why Plaintiff's reported mental-health reports were not entirely consistent with the record. In doing so, the ALJ considered the objective medical evidence set forth in Plaintiff's counseling and medication-management records, the psychological consultative evaluation, Plaintiff's daily activities, the life events that aggravated her symptoms, the medication taken by Plaintiff, and the level of improvement achieved through counseling and medication management. There are medication-management records indicating that Plaintiff was distractible, tearful, sad, irritable, or anxious; however, Plaintiff's thought process and content, memory,

---

[34] *Id.*

[35] AR 28.

concentration, and fund of knowledge were usually found to be within

normal limits during her medication-management appointments, and

other than an anxious, constricted, or dysthymic affect during

counseling sessions, there rarely were any abnormal mental-health

observations in the counseling records.[36] The ALJ also reasonably

---

[36] *See e.g.*, AR 436–38 (Dec. 2021: tearful and emotional after

recounting sensitive incident that caused prior trauma to be triggered);

AR 597–605 (March 2022: presenting as anxious and distractible with

persistent stress response, flashbacks to traumas and otherwise

normal mental-health status); AR 621–29 (May 2022: presenting as

anxious with persistent stress response and flashbacks to traumas but

less anxiety than prior appointments, and otherwise normal mental-

health status); AR 660–69 (Sept. 2022: presenting as pleasant, engaged

with mild anxiety and less persistent stress response and flashbacks,

and otherwise normal mental-health status); AR 691–700 (Dec. 2022:

presenting as pleasant, engaged, upbeat, positive, with mild anxiety,

guilt, obsessions, and normal memory, attention span, and

concentration); AR 721–31 (Apr. 2023: reporting much anxiety but

considered the observations and findings from the consultative psychological evaluation, during which Plaintiff's thought process, thought content, attention, concentration, and remote memory were normal.[37] Although Plaintiff only recalled 2 of 3 items during the recent-memory testing and she was not able to perform the 4-number digit span backwards, the other memory, fund-of-knowledge, concentration, and abstracting-thinking tests were normal.[38] The ALJ cited objective medical evidence conflicting with Plaintiff's subjective symptom testimony about her difficulties focusing and relating to others.[39]

--------------------

presenting with only mild anxiety and as pleasant, engaged, upbeat, positive, with normal attention span and memory); AR 740–41 (June 2023: noting that she was receptive to feedback and indicated understanding of concepts covered).

[37] AR 26 (citing AR 550–51).

[38] AR 551.

[39] *See Smartt*, 53 F.4th at 498 ("[I]nconsistent objective medical evidence . . . [may] discount subjective symptom testimony").

Overall, when evaluating Plaintiff's symptom reports, the ALJ appropriately considered the mental-health treatment records, along with Plaintiff's part-time work, situational stressors, and the treatment employed. The ALJ reasonably found that Plaintiff's part-time work, along with the few instances of distractibility or irritability mentioned in the mental-health records during the relevant period, indicated that she was not as limited as she testified to.[40] Moreover, the treatment records show improvement in Plaintiff's anxiety symptoms, as by the end of 2022, she typically presented with only mild anxiety absent situational stressors, such as her cousin's murder.[41]

Plaintiff also argues that the ALJ's paragraph B criteria analysis was unsupported because the ALJ did not cite to the record. The ALJ in his paragraph B criteria analysis at step three stated, "These

_____

[40] *See Nadon*, 145 F.4th at 1137 (determining that the ALJ provided specific, clear, and convincing reasons for discounting the claimant's testimony about her symptoms).

[41] *See, e.g.*, AR 691–97, 710, 724, 845, 847–49.

functional limitations are supported by the objective evidence of record and are discussed in greater detail below."[42] When evaluating Plaintiff's mental-impairment symptoms later in the ALJ's decision, the ALJ discussed each of the paragraph B criteria in separate paragraphs and explained the basis for his findings as to each criteria with discussion of the evidence supporting his findings. There was no error by the ALJ in organizing and supporting his paragraph B criteria analysis in this regard.

The ALJ provided clear and convincing reasons for discounting Plaintiff's symptom reports and for finding that she could perform fulltime work if limited to simple instructions in a low stress-job with occasional interactions with others.

**B.    Medical Opinions: Plaintiff fails to establish consequential error.**

Plaintiff argues the ALJ improperly rejected the medical opinion from her counselor Mr. Anderson. The Commissioner argues the ALJ reasonably found the opinions of Dr. Eather and Nurse Practitioner

---

[42] AR 21.

Austin to be more persuasive than Mr. Anderon's opinion. Although one of the reasons provided by the ALJ to discount Mr. Anderson's opinion is not supported by substantial evidence, this error is inconsequential as the other reasons given by the ALJ are supported by substantial evidence.

### 1.    Background

Mr. Anderson treated Plaintiff before the relevant period, and then resumed treating Plaintiff in December 2021.[43] Similar to most of the counseling records, the last counseling record from December 2023 states that the billing diagnosis is PTSD, unspecified; that treatment focused on sensorimotor psychotherapy/EMDR (eye movement densification and reprocessing) therapy/IFS (internal family systems) therapy for complex PTSD; and that Plaintiff was receptive to feedback and indicated understanding of the concepts covered.[44]

---

[43] *See, e.g.*, AR 445–46, 530–36, 575–76, 595–96, 606–07, 617–20, 631–32, 635–36, 647–48, 670–75, 689–90, 701–05, 717–19, 735–36, 738–47.

[44] AR 943–44.

In August 2022, Mr. Anderson completed a Mental Source Statement.[45] Mr. Anderson opined the following limitations:

- Plaintiff was moderately limited in her abilities to remember locations and work-like procedures; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; interact appropriately with the general public; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others.

- Plaintiff was markedly limited in the abilities to understand, remember, and carry out detailed instructions; sustain an ordinary routine without special supervision; and travel in unfamiliar places or use public transportation.

- Plaintiff was severely limited in the abilities to maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; and complete a normal workday and workweek without interruptions from psychologically based

---

[45] AR 763–66.

symptoms and to perform at a consistent pace without an

unreasonable number and length of rest periods.[46]

As to the B criteria of mental listings, Mr. Anderson opined that

Plaintiff had marked difficulties interacting with others and adapting

or managing herself; and extreme difficulties understanding,

remembering, or applying information, and maintaining concentration,

persistence, or pace.[47] In addition, Mr. Anderson opined that Plaintiff

was likely to be off-task more than 30 percent of the workday and

would likely miss 4 or more days of work per month if working

fulltime.[48]

> In addition to these check-box opinions, Mr. Anderson wrote:
>
> I have worked with Maria for at least 5 years, and her
> condition of complex PTSD is severe. She is a very dedicated
> client – highly involved in her treatment and has made good
> progress. However, the condition is such that she requires
> 2–3 more years of extensive therapy to possibly achieve
> enough to progress to work consistently.[49]

---

[46] AR 763–64.

[47] AR 765.

[48] AR 765.

[49] AR 766.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

Three months prior to Mr. Anderson's opinion, Joyce Austin, PMHNP-BC, conducted a psychiatric disability evaluation of Plaintiff in March 2022.[50] Nurse Practitioner Austin reviewed "primary care clinic notes, psychiatry notes," clinically interviewed Plaintiff, conducted a mental status examination, and assessed intellectual functioning.[51] Nurse Austin observed Plaintiff with fair eye contact and normal speech and insight and as tearful, alert, orientated, appropriately dressed, labile, and at times tearful.[52] Nurse Austin's comments about Plaintiff's concentration was contradictory as she wrote both "no difficulty with attention or concentration" and "poor concentration levels noted during interview."[53] Plaintiff was able to perform each of the intellectual functioning tests except the 4 digit span backwards memory test and on the delayed memory recall test

---

[50] AR 545–53.

[51] AR 546.

[52] AR 550.

[53] AR 551, 553.

she recalled 2 out of the 3 items.[54] Nurse Austin diagnosed Plaintiff

with major depressive disorder (moderate), PTSD, anxiety, and

insomnia.[55] Although Nurse Austin recommended that Plaintiff may

benefit from an anger management course, Nurse Austin opined that

Plaintiff can understand, remember, and carry out simple and detailed

instructions, sustain concentration and persist in work-related activity

at a reasonable pace, interact with coworkers and superiors and the

public, and adapt to the usual stresses encountered in the workplace.[56]

     One month after Ms. Anderson's evaluation, Bruce Eather, PhD,

reviewed the then available medical evidence of record, including

Nurse Austin's opinion, Mr. Anderson's counseling records, and the

medication-management records.[57] Dr. Eather wrote:

> Claimant presents with signs/symptoms of depression and
> anxiety in the context of physical problems, psychosocial
> stressors, and past trauma (childhood sexual abuse, DV).
> Mental health treatment has included use of various

---

[54] AR 551.

[55] AR 552.

[56] AR 552–53.

[57] AR 93–

1
2
3

> psychotropic medications, including antidepressants, and
> mental health counseling. History of emotional and
> behavioral dysregulation, including anger dyscontrol.
> Claimant is cognitively intact and has reportedly been
> working as a bookkeeper over recent years.[58]

4 Dr. Eather opined that Plaintiff was moderately limited in her abilities

5 to maintain attention and concentration for extended periods; complete

6 a normal workday and workweek without interruptions from

7 psychologically based symptoms and to perform at a consistent pace

8 without an unreasonable number and length of rest periods; interact

9 appropriately with the public; and accept instructions and respond

10 appropriately to criticism from supervisors.[59] Dr. Eather found that

11 notwithstanding these moderate limitations Plaintiff "retains the

12 capacity to carry out tasks that are complex in nature on a consistent

13 basis in a competitive work environment," maintain adequate

14 attendance, and complete a normal workday/workweek so long as she

15
16
17

---

18 [58] AR 97.

19 [59] AR 100.

had occasional incidental contact with the public and not overly intrusive or critical supervision.[60]

2.   Standard

When evaluating the persuasiveness of each medical opinion, the regulations require the ALJ to consider and explain the supportability and consistency of each medical opinion.[61] The regulations define these two required factors as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[62]

---

[60] AR 101.

[61] 20 C.F.R. § 416.920c(b)(2).

[62] *Id.* § 416.920c(c)(1)–(2).

The ALJ may, but is not required to, explain how the other listed factors were considered.[63]

### 3.   The ALJ's Findings

The ALJ found Mr. Anderson's opinion unpersuasive, finding it to be both inconsistent with and unsupported by the objective medical evidence and his course of treatment.[64] In regard to the unsupported factor, the ALJ found that the terms "mild, moderate, and marked are merely degrees of limitations and offer nominal vocational relevance" and that Mr. Anderon's clinical assessment did not support marked or extreme functional limitations.[65] The ALJ highlighted that Mr. Anderson did not observe any deficits in attention, concentration, or memory when he resumed treatment in December 2021, and that as treatment continued, he "continued to document unremarkable clinical findings."[66] The ALJ also found that Mr. Anderson did not pursue or

---

[63] *Id.* § 416.920c(b)(2), (3).

[64] AR 29.

[65] *Id.*

[66] AR 29.

suggest a treatment course consistent with the marked or extreme limitations.[67]

In comparison, the ALJ found the reviewing psychological determination of Dr. Eather that Plaintiff could sustain fulltime work with limited social interaction as persuasive because it was well supported and Dr. Eather was familiar with Social Security rules and regulations, but somewhat less persuasive because additional evidence at the hearing supported a moderate restriction as to Plaintiff's ability to adapt and manage herself.[68] The ALJ found Nurse Austin's opinion that Plaintiff could perform and sustain fulltime work with no nonexertional limitations as only somewhat persuasive because Plaintiff's mental impairments require some workplace accommodations.[69]

_____

[67] AR 30.

[68] AR 28–29.

[69] AR 29.

4. <u>Analysis</u>

First, the Court finds the ALJ's determination that "mild, moderate, and marked" do not offer vocational relevance is not supported by substantial evidence. The form used by Mr. Anderson defined mildly limited, moderately limited, markedly limited, and severely limited in a vocationally relevant way:[70]

- "Moderately Limited – Significant interference with basic work-related activities i.e., unable to perform the described mental activity for at least 20% of the work day up to 33% of the work day."

- "Markedly Limited – Very significant interference with basic work-related activities i.e.., unable to perform the described mental activity for more than 33% of the work day."

- Severely Limited – Inability to perform one or more basic work-related activities."[71]

---

[70] AR 763.

[71] AR 763.

The terms were sufficiently explained to offer vocational relevance. The ALJ's finding otherwise is not supported by substantial evidence.

Nonetheless, substantial evidence supports the ALJ's finding that Mr. Anderson's opinion regarding Plaintiff's mental limitations is not supported by the objective medical evidence. Like the ALJ determined, Mr. Anderson's counseling notes did not contain noted observations to support the severity of these opined limitations, particularly as to being off-task and difficulties maintaining concentration, persistence, or pace. Instead, Mr. Anderson's counseling records primarily summarized Plaintiff's own reported symptoms during the appointment, listed the observations related to Plaintiff's mood and affect, and repeated template information. The counseling records often noted that Plaintiff's mood and/or affect were dysthymic, congruent, or anxious, and on one occasion stated that Plaintiff was irritable, and on another occasion that she was crying because of the murder of her cousin. Contrary to noting deficits about Plaintiff's attention, concentration, or memory, the counseling records routinely stated that Plaintiff "was receptive to feedback [and] indicated understanding of

the concepts covered."[72] Substantial evidence supports the ALJ's

finding that Mr. Anderson's opinion was unsupported. In addition, the

ALJ reasonably found that even though Mr. Anderson opined that

Plaintiff required therapy for 2–3 years, presumably at the same pace

of once or twice per month, such opinion did not adequately explain the

extent of his other check-box opinions.

Likewise, the ALJ's finding that Mr. Anderson's opinion is

inconsistent with the medical records authored by Plaintiff's

medication provider and the other records is supported by substantial

evidence. As the ALJ highlighted, the medication provider's

observations during the appointment the same month as

Mr. Anderson's opinion states that Plaintiff was pleasant, engaged, had

mild anxiety, had good concentration and attention span, had less

persistent stress response and flashbacks to recent and past traumas,

had good insight and judgment, and had intact memory.[73] The ALJ

reasonably found that such observations, which were largely consistent

---

[72] *See e.g.*, AR 606–07, 617–20, 701–05, 717–20, 817–26, 841–44.

[73] AR 651–53.

with the medication provider's usual observations, were inconsistent with the severity of Mr. Anderson's opined limitations.

As previously mentioned, although Nurse Practitioner observed some concentration difficulties during the psychiatric evaluation, she opined that Plaintiff could still perform both simple and complex tasks and sustain concentration such tasks. The ALJ reasonably evaluated the conflicting opinions and found that the medical evidence supported limiting Plaintiff to simple tasks in a low-stress job with occasional interactions with others. Limiting Plaintiff to a low-stress job and only occasional interactions with coworkers also surpassed the limitations recommended by Dr. Eather. Substantial evidence supports the ALJ's evaluation of each of the medical opinions.

Plaintiff also argues that the ALJ did not mention Plaintiff's presentation to a crisis center in December 2021, when she had thoughts of suicidal ideation and concerns over domestic violence at home. However, the ALJ did mention that Plaintiff reported increased mental-health symptoms because of a domestic conflict with her

husband during this period and at other times of situational stress.[74]

Contrary to the Plaintiff's argument that the ALJ cherry-picked

portions of the record, the ALJ fairly interpreted the objective findings,

which did not often note a deficit in attention or concentration.

Substantial evidence supports the ALJ's finding that the medication-

management records and other evidence are inconsistent with

Mr. Anderson's marked and extreme functional limitations.

## C.     RFC: Plaintiff fails to establish error.

Plaintiff argues the ALJ failed to properly include all her mental-

health limitations into the RFC and the hypothetical presented to the

vocational expert. This argument depends on her contention that the

ALJ erred in evaluating her mental-health symptom reports and the

mental-health opinions. Because there was no error, this final

argument necessarily fails.

---

[74] AR 25–27.

## IV.     Conclusion

Plaintiff fails to establish that the ALJ consequentially erred. The ALJ's nondisability finding is supported by explanation and substantial evidence.

Accordingly, **IT IS HEREBY ORDERED**:

1.     The ALJ's nondisability decision is **AFFIRMED**.

2.     The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 11 and 13**, enter **JUDGMENT** in favor of the **Commissioner**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 12th day of November 2025.

_____
EDWARD F. SHEA
Senior United States District Judge